IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JANET GREEN, et al.,

           Plaintiffs,

v.                                          Civil Action No. 2:13-cv-30766

C. R. BARD, INC.,

           Defendant.

MEMORANDUM OPINION AND ORDER
(*Defendant's Motion for Summary Judgment*)

Pending before the court is defendant C. R. Bard's ("Bard") Motion for Summary Judgment [ECF No. 48]. As set forth below, Bard's Motion for Summary Judgment is **GRANTED IN PART** with respect to the plaintiffs' claims for manufacturing defect, breach of implied warranty, and breach of express warranty. Bard's Motion for Summary Judgment is **DENIED IN PART** with respect to the plaintiffs' strict liability and negligent failure to warn claims.

I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 8,000 of which are in the Bard MDL, MDL 2187. In an effort to efficiently and effectively

manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order ("PTO") # 102, No. 2:12-md-2187 [ECF No. 729]. This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Green's case was selected as a Wave 2 case by the plaintiffs. PTO # 118, No. 2:12-md-2187 [ECF No. 841].

Ms. Green was surgically implanted with the Avaulta Solo Anterior Synthetic Support system (the "Avaulta") by Dr. Kent Haggard and Dr. Kelly Nichols at St. Luke's North Hospital North in Kansas City, Missouri. Am. Short Form Compl. ¶¶ 10–13 [ECF No. 6]. As a result of complications allegedly caused by the Avaulta, Ms. Green brings the following claims against Bard: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; loss of consortium; and punitive damages.[1] *Id.* at ¶ 14. In the instant Motion, Bard moves for partial summary judgment on the grounds that the plaintiffs' claims are without evidentiary support. Bard's Mem. Supp. Mot. Summ. J. 1 ("Mem. in Supp.") [ECF No. 49].

---

[1] Bard also filed a Motion for Partial Summary Judgment on Punitive Damages Claims [ECF No. 50]. That motion is addressed in a separate order.

2

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105

F.3d 188, 191 (4th Cir. 1997).

## B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the plaintiffs did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan.

17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Green received the implantation surgery for the Avaulta in Missouri. Thus, the choice-of-law principles of Missouri guide this court's choice-of-law analysis.

I find that these principles compel application of Missouri law. For tort claims, "Missouri courts apply the most-significant-relationship test as defined in the Restatement . . . Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994) (internal citations omitted). "[T]he rights and liabilities of the parties will be determined by the law of the state with the most significant relationship to the accident and the parties." *Id.* (citing Restatement (Second) of Conflict of Laws § 145 (1971). Here, Ms. Green was implanted with the device at issue in Missouri, and the plaintiffs are both residents of Missouri. Accordingly, as the parties agree, I find that the plaintiffs' claims are governed by Missouri law.

III.  **Analysis**

Bard argues that it is entitled to partial summary judgment because the plaintiffs lack evidentiary support on the following claims: failure to warn on both theories of negligence and strict liability, manufacturing defect on both theories of negligence and strict liability, breach of express warranty, and breach of implied

5

warranty. The plaintiffs have agreed not to pursue claims for manufacturing defect, breach of express warranty, and breach of implied warranty. *See* Response 5–7, 9 [ECF No. 104]. Accordingly, Bard's Motion on the plaintiffs' claims for manufacturing defect, under theories of strict liability and negligence, breach of express warranty, and breach of implied warranty are **GRANTED.** Below, I apply the summary judgment standard to the plaintiffs' failure to warn claims.

### A. Failure to Warn

Under Missouri law, "[t]he elements of a cause of action for strict liability failure to warn are: (1) the defendant sold the product in question in the course of its business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. 2011).

Furthermore, "[although negligence and strict liability theories are separate and distinct, the same operative facts may support recovery under either…particularly in a failure to warn case." *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 118 (Mo. App. 1986).

> The elements of a claim for failure to warn based in negligence are: (1) the defendant designed the product at issue; (2) the product did not contain an adequate warning of the alleged defect or hazard; (3) the defendant failed to use ordinary care to warn of the risk of harm from the alleged defect or hazard; and (4) as a direct result of the defendant's failure to adequately warn, the plaintiff sustained damage.

6

*Moore*, 332 S.W.3d at 764.

> There are two aspects of proving causation in a failure to warn case. First, of course, the plaintiff must show causation in fact by showing that the product for which there was no warning caused the injuries . . . Second, the plaintiff must show proximate cause. To do this, "plaintiffs must show that a warning would have altered the behavior of the individuals involved in the accident."

*Id.* at 761–62 (quoting *Arnold v. Ingersoll-Rand Co.*, 834 S.W.2d 192, 194 (Mo. 1992)).

Further, Missouri applies the learned intermediary doctrine. *See, e.g., Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. App. E.D. 1999); *Joyce v. Davol, Inc.*, 2016 WL 775183, *4 (E.D. Mo. Feb. 29, 2016). Under the doctrine, "the manufacturer of prescription drugs or products discharges its duty to warn by providing the physician with information about risks associated with those products." *Alpha Therapeutic*, 3 S.W.3d at 419. Thus, under the doctrine, if the implanting physician was adequately warned about the risks associated with the drug or product, there is no proximate cause between any alleged failure to warn and the plaintiffs' injuries. *Id.* at 420.

Bard argues that it is entitled to summary judgment on the plaintiffs' failure to warn claims because the plaintiffs cannot put forth proof of causation. According to Bard, Dr. Haggard testified that there is no new information that he had seen as of his deposition that would cause him to change anything about Ms. Green's Avaulta implantation. *See* Mem. in Supp. 18–20. However, the plaintiffs contend that Bard is misrepresenting Dr. Haggard's testimony. *See* Response 8–9. According to the plaintiffs, Dr. Haggard testified that he was not aware of many risks that the plaintiffs allege that he should have been. Consequently, according to the plaintiffs,

7

Dr. Haggard was not able to adequately warn the plaintiffs given that he was not adequately warned himself. *Id.*

A review of the plaintiffs' arguments and Dr. Haggard's testimony demonstrates that genuine disputes exist with regard to whether Bard's warning was adequate, and whether the alleged inadequate warning proximately caused the alleged harm to the plaintiffs. Therefore, Bard's Motion on the plaintiffs' claims for both strict liability failure to warn and negligent failure to warn are **DENIED**.

### IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion [ECF No. 48] is **GRANTED IN PART** with respect to the plaintiffs' claims for manufacturing defect, breach of implied warranty, and breach of express warranty. Bard's Motion is **DENIED IN PART** with respect to the plaintiffs' claims for strict liability failure to warn and negligent failure to warn.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 6, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE